[974 NYS2d 66]

In the Matter of JACQUELINE S. LINDER (Admitted as JACQUE-
LINE SUSANNAH LINDER), an Attorney, Respondent. DEPART-
MENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL
DEPARTMENT, Petitioner.

First Department, October 31, 2013

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Vitaly Lipkansky* of counsel), for petitioner.

*Jacqueline S. Linder*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent Jacqueline S. Linder was admitted to the practice of law in the State of New York by the Second Judicial Department on September 24, 2008. At all times relevant to this proceeding, respondent has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee moves for an order pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (e) (1) (i) and (iii) immediately suspending respondent from the practice of law until further order of the Court based upon her willful failure to cooperate with the Committee's investigation of allegations of professional misconduct and other uncontested evidence of professional misconduct which immediately threatens the public interest.

The Committee opened a sua sponte investigation into respondent's professional conduct as a result of two dishonored check notifications received from the Lawyers' Fund for Client Protection in connection with respondent's IOLA (escrow) account. The first notification, dated November 18, 2011, advised that a check in the amount of $2,000 issued on respondent's escrow account had been returned on October 21, 2011 due to insufficient funds. The second notification, dated January 11, 2012, advised that an escrow check in the amount of $6,300 was similarly dishonored on December 14, 2011. The Committee forwarded respondent a copy of the dishonored checks. Respondent was asked to provide an explanation as to the cause, and to include her bank and bookkeeping records pertaining to her escrow account during the preceding six-month period. Thereafter, respondent communicated with the Committee in writing and by telephone, requesting and receiving extensions of time to answer the Committee's inquiries until January 11, 2012. When that date came and no response was received, the Committee wrote respondent on January 17, 2012, informing her that she had 10 days to submit a response and no further extensions would be granted. In her subsequent deposition, respondent testified that she never received this letter.

In April 2012, via court-ordered subpoena, the Committee obtained the bank records for respondent's escrow account at Apple Bank for the "audit" period of December 30, 2010 to January 31, 2012. The Committee's investigative accountant used these records to create a ledger (an Excel spreadsheet) in which the bank statements, canceled checks and deposit slips were used to reconstruct the account transactions for the audit period.

By letter dated July 23, 2012, the Committee sent respondent a copy of the Excel spreadsheet and directed her to fill in the column entitled "Client Matter" for every deposit and disbursement listed. On July 30, respondent telephoned the Committee requesting additional time to submit all previously requested information and records. The Committee agreed to extend respondent's time to respond to August 30, and then another extension to September 20, 2012. Despite these extensions and a reminder letter dated September 25, 2012, respondent did not provide the promised information.

On October 18, 2012, this Court issued a subpoena duces tecum directing respondent to appear on November 7, 2012 and to bring with her various escrow records, particularly canceled checks, deposit slips, a ledger and retainer agreements. On October 26, 2012, respondent faxed a letter to the Committee wherein she promised to provide the information by October 30, and advised the Committee of her new office address at Fulton Street, although she was still accepting mail at her previous office location. Respondent did not submit the records by October 30, 2012. However, it should be noted that Hurricane Sandy hit New York City on October 29, 2012, and lower Manhattan, including Fulton Street as well as the Committee's offices, were shut down for several days.

On November 29, 2012, respondent appeared, pro se, for her deposition, bringing with her bank statements and copies of checks, and the Excel spreadsheet with some of the "Client Matter" column filled in, as requested. Respondent did not bring the ledger with her, nor did she bring deposit slips. The Committee questioned respondent about her limited and sporadic cooperation with its investigation into the two dishonored escrow checks. Respondent testified that she did communicate on several occasions; she was not deliberately ignoring the Committee; she was busy with her law practice; and once she was served with the subpoena, she believed that she did not have to respond to the Committee's inquiries until the deposition.

The Committee then questioned respondent about her escrow account. According to the bank records, respondent's testimony and her case file, on or about June 29, 2011, respondent, who represented the seller in a real estate transaction deposited a down payment check in the amount of $10,500 into her escrow account. Respondent testified that the day before she made this deposit, the balance in the escrow account was $1, and she was required to maintain intact the down payment funds in her account until the closing, which took place on December 1, 2011. From July 7 through November 30, 2011, respondent disbursed almost all of the down payment via 24 separate transactions, all but two of which were by checks made payable to herself. There was only one other deposit made to the escrow account during this time period, for $50 on November 15, leaving a balance in the escrow account of $81.75 on November 30, 2011.

On October 21, 2011, the day the $2,000 check was dishonored, the balance in respondent's escrow account was approximately $1,096 and, on December 14, 2011, the day the $6,300 check was dishonored, the balance was about $1,331. The closing went forward on December 1, 2011. Respondent informed the seller that she did not have the down payment funds. In May 2013, the seller advised the Committee that respondent has been paying him back the $10,500 in installments, with an outstanding balance of approximately $2,500.

Respondent testified during her deposition that the aforementioned disbursements were not for any authorized purpose connected to the real estate transaction. Further, respondent explained that she did not have an operating account. As a result, she deposited fees into her escrow account, withdrew fees from it, and believed that something went wrong with her accounting. Respondent also asserted that some of the disbursements to herself, totaling $2,000, were pursuant to the agreement she had with the seller to pay for matters she handled for him.

The Committee requested that respondent provide her records for her two personal bank accounts for the audit period and her entire case file for the client's real estate matter before December 14, 2012. On December 17, 2012, respondent delivered to the Committee most of her case file in the real estate matter. However, she did not provide the bank records for her personal bank accounts, nor did she provide any further explanation for her alleged misappropriation of escrow funds.

In January 2013, the Committee wrote respondent at her old business address, reminding her that she needed to submit the

records and informing her that her continued failure could lead to a suspension motion. Respondent did not respond.

By letter dated May 2, 2013, again mailed to respondent's old business address, the Committee noted that the evidence currently established that she had misappropriated nearly all of the client's down payment and warned that if she did not fully comply with the Committee's outstanding requests and explain her apparent misappropriation, a motion to suspend would be filed. On May 7, 2013, the Committee forwarded to respondent's more recent business address its May 2, 2013 letter, with a directive to submit a full response by May 14, 2013.

On May 14, 2013, respondent left two phone messages for the Committee staff attorney stating that her messages constituted her "acknowledgment" and "official response" to the Committee's letter; that she never received the January and May 2 letters; and she would send a fax to the Committee. The next day, respondent left another phone message asking the Committee to contact her on her cell phone to acknowledge that it received her phone messages from the day before. That same day, the Committee sent respondent a letter acknowledging her two prior phone messages, advising her that she had 10 days to fully comply with the Committee's investigative requests and no further extensions would be given, and a motion for her immediate suspension would be filed if she did not cooperate. No response or further communication was received from respondent.

While respondent gave limited cooperation by providing some bank records and appearing for a deposition, she otherwise did not fully cooperate by repeatedly failing to produce certain documents including her personal bank account records. Respondent's willful noncompliance after numerous opportunities to provide the requested information constitutes an adequate basis for immediate interim suspension under 22 NYCRR 603.4 (e) (1) (i) (*see Matter of Mainiero*, 98 AD3d 255 [1st Dept 2012]; *Matter of Jobi*, 56 AD3d 158 [1st Dept 2008]; *Matter of Szaro*, 10 AD3d 81 [1st Dept 2004]).

In addition, the bank records indicating conversion or misappropriation of funds in the escrow account constitutes uncontested evidence of professional misconduct under 22 NYCRR 603.4 (e) (1) (iii) (*see Matter of Harris*, 97 AD3d 96 [1st Dept 2012]; *Matter of Jobi*, 56 AD3d at 160-161; *Matter of Szaro*, 10 AD3d at 82-83). Moreover, respondent defaulted on this motion seeking her immediate suspension.

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law, effective im-

mediately, pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii), until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.

FRIEDMAN, J.P., ACOSTA, FEINMAN, GISCHE and CLARK, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, until such time as disciplinary matters pending before the Committee have been concluded, and until further order of this Court.